Good morning. May it please the court, Tracy Dressner, oral petitioner, Jesse Roberts. I'm going to endeavor to reserve three minutes for rebuttal. This is a troubling case. Mr. Roberts, we have a situation where Mr. Roberts acted oddly at three different car dealerships, both on the day before and the day of his arrest. He made some odd and somewhat nonsensical statements to the police on the day of his arrest. And then just 18 days later, his attorney raises a doubt about his competency and the court sends the case to the mental health court. And then over the next year and a half, not one, not two, but three findings of incompetency by two different psychiatrists, he spends many months in a state mental hospital. And then he goes to trial. And I think in a case where there are two, three charges involving specific intent, one being the kidnapping for carjacking, which carries a life sentence. And his attorney says nothing about, raises nothing about Mr. Roberts' mental health. Yet his defense, to the extent there was one, was basically that Mr. Roberts did have the inept car thief. But then he even says, the trial attorney even says to the jury, you know, we used to determine the defendant's state of mind when he was involved in these acts. Can I ask you a quick question? Sure. I'm just curious, it wasn't argued in your brief, but should we give, not, shouldn't we give deference under the statute to the California Supreme Court, which essentially decided the case on the merits and that would preclude you from seeking relief under the federal statute? Well, this was a summary denial, so we don't know what the California Supreme Court did. But assuming it's a summary denial on the merits, that under the ADPA, Mr. Roberts is still entitled to relief if there was an unreasonable application of settled federal law. And here, there is an unreasonable application of Strickland. I mean, the California Supreme Court didn't even find a prima facie case, and I just find that kind of mind-boggling. We have, where I had to respond was the... Well, I mean, we're supposed to look at what reasonable jurors could have reached on this record. Why wouldn't it be reasonable to conclude that, yes, he had these really sort of florid fantasies and detachment from reality in terms of all these powers and the cars, in a way, were the instruments of the power. But the specific intent for carjacking is the intent to deprive the other person of possession of the vehicle, either temporarily or permanently. He may have had some psychotic fantasy that taking the car was going to give him powers, but he had the intent and clearly seemed able to form the intent to take the car, and the intent was to deprive the dealership of the possession of the car, either temporarily or permanently. So, why isn't that a reasonable reading that a reasonable jurist could conclude? Well, I think two answers to that. One, I think the more important specific intent is the kidnap for carjacking, because that is the one that carried the license, and there had to be the intent to move the person for the purpose of the carjacking. But I'm not sure that somebody responding to psychotic thought process qualifies as a specific intent. If you're responding to auditory hallucinations, auditory command hallucinations, telling you to do something, yes, you're physically doing it, but are you mentally doing it for that purpose of stealing the car, or are you mentally doing it because you're being compelled to do it by these voices that are telling you to do it? As the court just said, these are unusual circumstances, and the jury was left with no explanation for this bizarreness. And the trial judge even says to him, how do we know what his specific intent was? And he had the answer. He had the mental health records. It would have put Mr. Roberts' actions in a context for the jury where they could have said, wow, okay, this guy has got mental health issues. He's psychotic. He's schizophrenic. He's responding to hallucinations instead of he's an inept car thief, and he didn't really mean to kidnap somebody. He was just trying to steal the car. He basically gave the jury 95% of what they needed to do to convict him. And there's no rational reason that I can come up with for why the attorney wouldn't do it, except that we probably know the answer based on the Marston transcripts where he was specifically asked, the judge was concerned enough about the specific intent and the mental health issues that he recalled the Marston hearing and asked the attorney specifically why he wasn't raising mental health issues. And the only answers that the attorney gave was because he had a busy trial schedule and had been denied a continuance. Well, that's not a tactical decision. That's an attorney convenience done at the nature of the case. Couldn't that comment be read as saying that not as independent but as dependent? I had a busy trial schedule, so I asked for a continuance, and it was denied, and therefore the court had jammed him. Correct. But either way, the only reason he gave was that he had no time to pursue this. Now, he announced to the court very quickly after his appointment that he wasn't going to call any witnesses, and why would any attorney? He had the mental health records, and we know what they say. Can I ask a question about what you contend is the meaning of the specific intent requirement for the kidnapping for carjacking? Because the instruction that was given and no one objects to is, the specific intent required for the crime of kidnapping for carjacking is the intent to facilitate the commission of carjacking. Then it has an extra sentence which seems like a special rule about something that would qualify. If some of the transportation of the victims occurs after the actual perpetration of the carjacking and the purpose of the transportation was to affect the carjacker's escape or to prevent an alarm from being sounded, the kidnapping was with specific intent. Is that illustrative or limiting that second sentence? In your view. I'm sorry. Is it illustrative of the first? I'm not sure what the second sentence was. The second sentence has a special rule, it seems, about if it was to affect the carjacker's escape or to prevent an alarm from being sounded. Are those things that must be found in order to find the mental state, or are those things that are illustrative of what may be found to find the mental state? Do you see the difference? I do, and I don't know the answer to that without doing a little more research. But whether it is, and I think it's got to be an illustration of what my thought would be its illustration, but the specific intent requires moving the person to facilitate the carjacking. And so there has to be not just the intent to deprive the car, but the intent to move the person also. And whether really on either intent, I go back to what I said earlier, that whether you really are intending it or whether you're responding to command hallucinations, I think was an issue that was for the jury to decide had the attorney presented the wealth of mental health evidence that was available to them. And I see I've got about used up almost all my time. I will reserve what's left for rebuttal. Sure, we will make sure you have adequate time for rebuttal. Let's hear from the State. Good morning, Your Honors. May it please the Court, Deputy Attorney General Nicholas Webster for the State. As the District Court found, the California Supreme Court reasonably rejected Petitioner's ineffective assistance of counsel claim here under AEDPA. Testimonies failed to demonstrate meet the heavy burden of showing that no reasonable jurist could agree that counsel acted reasonably in this case or that no reasonable jurist could agree. Did the State file any kind of an opposition to the petition for habeas corpus in the California Supreme Court? I don't believe so, Your Honor, no. So they didn't have like a set of arguments from the State as to why to deny it. They just had his handwritten petition. Yes, Your Honor, his petition and the records he provided there. And the main problem in this case for Petitioner. I guess that is the same question. Is that a merits-based denial then? Yes, Your Honor, that's a denial on the merits by the California Supreme Court. The Court contests that. And the question becomes, could there be any reasonable reason for the California Supreme Court to deny the claim? And it could have been, as I've just described, on prejudice or on finding that counsel selected a reasonable defense in this case. One of the main problems with Petitioner's argument here is that the evidence simply did not support his position. He really relies on two sets of facts to argue that he was unable to form the specific intent to commit carjacking or kidnapping that day. And those are his actions on the days of the offenses and his later finding of incompetency. But when you drill down on those, neither really support his position. So Petitioner's actions on the days of the offenses show that he acted consistently grounded in reality and with a rational plan. He went to these car dealerships in a taxi knowing he was going to try to steal the vehicles. He feigned being interested in buying the vehicles. And he gave details that showed that he was grounded in reality here. He said, I have $5,000 to put down. I'm looking to buy a $25,000 car. He was able to identify the different models that he was interested in. When he was caught by the police, he gave a plausible why, saying, oh, I just forgot my ID. That's why I left the dealership. And he even announced his intent, made it very clear to the second victim. When she thwarted his attempt to steal the car and took the keys out and jumped out of it, he yelled at her, all I wanted was the car. All I want is the car. Can you remind me, though, when he was arrested, and so this is on the day of the third offense, didn't he describe some of these hallucinations he was having to the police? It sounded like from day one of this affair, he was not in his right mind. So he did make some odd statements during his communication with police. He said, for instance, that they already knew his name or that he was being followed. But the totality of what occurred on that day really showed someone that was able to form the specific intent because what he also said to the police was a very normal story. I came from Las Vegas because I wanted to visit my sister. I got here, I want to go back to Las Vegas, but I need a car. And I went to the car dealership, but nothing weird happened. I just left because I didn't have my ID. So that was the other thing that he said to police. And then based on his actions that day, a reasonable jurist could look at this and say, yes, the evidence of a mental incapacity defense was weak based on that. Turning to the other section. Just to ask you the same question about this, just so I understand what the specific intent is. Do you read in that instruction the specific intent to be defined by the first sentence as the intent to facilitate the commission of carjacking? I'm talking about the kidnapping for carjacking. And then the next sentence which talks about prevention of escape or of an alarm as being illustrative of the first or limiting of the first. Illustrative of the first, I think, Your Honor. Just some examples of some ways to do it. So that would be one that would be sufficient but not necessary. Yes, Your Honor. I agree. The other major set of facts that Petitioner relies on is the later finding that he's incompetent to stand trial. But when you drill down on that timeline as well, it doesn't convincingly support his position. So before the offenses, there's no documented mental health treatment in this case or mental health history that Petitioner has provided. As I've discussed, on the days of the offenses, he acted in a manner that showed he could form specific intent. And it wasn't until May 1st that we have the first report actually recommending finding him incompetent to stand trial. To me, it was significant that on the day he was caught, he was already manifesting the very problems that later were quite well documented in me. Well, Your Honor, the problems that were later documented, like in that May 1st report, are much, much more severe than what was described in the police report. In the police report, there was some paranoid thinking. Maybe I think it would be one way to categorize it. But it wasn't the severe delusions that happened on May 1st. And that's actually very important. Between February 21st and May 1st, that's a lot of time for Petitioner's mental health to fluctuate. And one thing we know for certain about Petitioner's mental health here is that it was not static. It really did fluctuate quite a lot. He was found incompetent and incompetent again. So, again, he ended up representing himself for six months after this. So it's especially unreasonable to assume that Petitioner lacked the ability to form specific intent on February 1st, of 21st, just because on May 1st we have this report finding incompetency. I also wanted to touch on one of the arguments that my friend on the other side made. Petitioner argues that his defense presented to the jury was consistent with a mental incapacity defense. And that's not actually the case. A reasonable jurist could see it differently. So his defense to the jury was, I'm an inept car thief. I did something wrong, but it wasn't as wrong as what the prosecutor is saying. So it was the type of defense where you're taking responsibility to some extent. But a mental incapacity defense isn't based on that same line of reasoning. It's, I didn't even know what I was doing. I wasn't even able to form an intent. I'm actually innocent because of mental health issues. So a reasonable jurist could find that those were inconsistent defenses and say that counsel acted reasonably in going with the inept car thief defense, especially because it actually worked on some of the offenses. One of the kidnappings to make carjackings wasn't found. To conclude, Your Honors, Petitioner cannot show under these weak facts that the California Supreme Court was objectively unreasonable in denying the petition here. The district court's judgment denying the petition should be affirmed. Okay. Thank you very much. Thank you, Your Honors. Let's put two minutes on the clock for the vote, please. Thank you. I appreciate that. And I wanted to confirm that there was no other pleadings in the state court. It was just Mr. Roberts' pro per pleading. What occurred at the car dealerships was odd. He did not come to all of them in a taxi. We know from his statement to the police that he came to the first one, according to him, in his own car, which he had driven to Los Angeles from Las Vegas. Why would you need a car if you have your car and you drove here from Las Vegas? One of the nonsensical statements that he made, none of this makes sense. He tries to leave the car dealership in a car that's a manual shift where the experienced car dealer says it was clear he didn't know how to drive a manual shift car. He acts bizarrely when the police show up. He asks, are you going to shoot me or are you going to tase me? And he runs off. And then he tells the police that day that people, since he had been his recent release from prison, people have been watching him and following him constantly. This emphasis by both the district court and respondent, that somehow because the doubt wasn't declared about his competency until eight days after his arrest, means we can't tell what his mental state was on the day of the crimes, to me it's just a silly argument. We don't have a criminal justice system that assesses the mental health of inmates on a daily basis. We have what we have. And what we have is a consistent pattern of bizarre behavior, bizarre statements. Eighteen days later, a doubt raised by his attorney. And then we find that in fact the attorney was right. And he's found incompetent three times. There was no finding of competency during that year-and-a-half period. Patton thought he was restored to competency. He goes back to mental health court. They find him incompetent again, and he goes back to Patton. This is just such a clear case of mental illness, of a mental illness-generated crime. And Mr. Roberts had a right as a mentally ill person to have his actions judged by the correct standard. And there's just simply no reason for the court to have it. It's rare to see a case with this much mental health issues substantiated in the records and not have the attorney do the appropriate thing, which is research it, present it, and let the jury decide it. And with that, I will rest, and I appreciate the extra time. Okay. Thank you very much for your argument. That case just argued is submitted.
judges: WATFORD, COLLINS, Murphy